DEWEY (ALDEN v.). See Case No. 153.

DEWEY (BANK OF NORTH CAROLINA v.). See Case No. 897.

DEWEY (HOLLEMAN v.). See Case No. 6,607.

## Case No. 3,850.

### DEWEY v. KELTON et al.

[18 N. B. R. 217.] [1]

District Court, D. Vermont. Aug. 6. 1878.

BANKRUPTCY—EQUITABLE CLAIMS—PAYMENT.

In 1872 the bankrupt sold certain government bonds belonging to his sister, which were then in his hands. and out of the avails paid and took up a mortgage note which then fell due, secured on certain real estate, and kept the balance to his own use. At that time he also owed his sister for a balance of interest he had previously ·received, and had other government bonds of .hers which he had or afterwards pledged for his debts. During the following six years he paid her money from time to time, which was charged against the interest received by him upon her bonds. and not otherwise applied by either. *Held*, that she was entitled to be treated as if she had held the mortgage from the time he took it up; that the payments should be applied upon the interest and not to the balance of avails of the sale; and that she was entitled to a lien for the payment of the sum found to be due to her after application of such payments.

[This was a suit by Jane E. Dewey against S. S. Kelton, assignee in bankruptcy, and John P. Dewey, the bankrupt.]

S. C. Shurtliff, for oratrix.

B. F. Fifield and Gleason & Field, for defendants.

WHEELER, District Judge. This cause has been heard on pleadings, proofs and arguments. It appears beyond question that the bankrupt defendant. John P. Dewey, on the 26th day of April, 1872, sold government bonds amounting to three thousand dollars then in his hands, most of which belonged to the oratrix. his sister, and the rest either to her or their mother, for three thousand four hundred dollars and fifty cents net, and out of the avails paid and took up a mortgage note of two thousand four hundred and thirty-six dollars, due that day with interest annually, on which two years interest amounting to three hundred and one dollars and eight cents had accrued, secured on the premises in question owned by him.

There is some confusion on the evidence as to which, she or her mother, owned the bonds sold; they were not clearly hers, but on the whole it satisfactorily appears that upon the understanding between her and her mother and the bankrupt they were hers. They were so sold and the avails so used without her knowledge or consent. They were left with him to be taken care of, exchanged for others if he should think best, and to have the coupons collected. It is claimed in behalf of the assignee that the transaction

---

[1] [Reprinted by permission.]

created a mere debt. But they were her bonds in his hands to be held for her, not his bonds in his hands for which he owed her. She had trusted to his care, not his responsibility. He held them in trust, not as his own. He converted them in violation of the trust.

In Story, Eq. Jur. § 1258, it is said: "Whenever the property of a party has been wrongfully misapplied, if its identity can be traced, it will be held in its new form liable to the rights of the original owner or cestui que trust." And in section 1259: "It matters not in the slightest degree into whatever other form different from the original the change may be made, whether it be that of promissory notes, or of goods, or of stocks, for the product of the substitute for the original thing should follow the nature of the thing so long as it can be ascertained to be such. The right ceases only when the means of ascertainment fail, which of course is the case when the subject matter is turned into money and mixed and confused in a general mass of property of the same description." These doctrines are recognized in the laws of the state, which always govern as to such rights of property (Abell v. Howe, 43 Vt. 403); and by the highest judicial tribunal of the land (Cook v. Tullis, 18 Wall. [85 U. S.] 332). The money that these bonds brought went directly to take up this mortgage. It is distinctly traceable there. The mortgage constitutes a title to the property to that extent. He in effect bought it with her property. As against him, in a court of equity, she had the same right to the property that she would have had in it if she had bought the mortgage and taken it. She had the right to say that what was done with her property was done for her. By the transaction an equitable right to the mortgaged premises equal to the mortgage interest became vested in her if she should choose, as she has chosen, to take it. The bankrupt law cuts off no such rights. It merely takes the property of the bankrupt as it is, subject to all trusts, and distributes it among the creditors. This has always been the policy of bankrupt laws. Scott v. Surman, Willes, 400; Cook v. Tullis, 18 Wall. [85 U. S.] 332. The assignee takes no right other than the bankrupt has, except as to property conveyed in fraud of the rights of creditors, or of certain provisions of the bankrupt law, and this property was not conveyed by the bankrupt at all. It was rather kept by him by conveying hers in fraud of her rights. His creditors supposed, when they trusted him, that he had paid off the mortgage with his own means, and that he owned the property clear. He held himself out as such owner. It is claimed for the assignee in behalf of the creditors, that it is inequitable for her now to claim the benefit of the mortgage against them. But it is not shown that she has ever done anything to mislead them. They do not appear to have inquired of her about it, and if they had, she could not have told them, for she did not know more than they did that her bonds had paid off the mortgage. It is the common case of creditors deceived as to the property of their debtor. They cannot justly claim that others who have not deceived them shall give up their rights.

She seems entitled to stand and be treated here as if she had held the mortgage from the time he took it up. He owed her at that time one hundred and two dollars and seventy cents, for a balance of interest he had previously received. He had five hundred dollars of other goverment bonds that belonged to her, which he had, or has since, wrongfully pledged for his debt. He kept the balance of the avails of these bonds sold, six hundred and sixty-three dollars and forty-one cents, to his own use. He has through his firm paid her money from time to time since, which they mutually understood was to apply upon the interest received by him on her bonds, and it was charged against credits for such interest, and not otherwise applied by either. He became indebted to her for the balance of the avails of the sale. It is claimed that the payments should be applied upon that debt. He had the right to make the application of any payment made by him. If he made none, she had the right. They both applied them upon the interest generally. Although she did not know of the other debt, it does not seem that she has the right to change the application, now she has found it out, more than she would have had if she then had known of it. So it must be applied upon the interest. There has been no application on any particular interest. There are several sorts to which the law must make the application. By the law of the state, payments not otherwise applied are to go first to extinguish the oldest debts to which they are applicable. St. Albans v. Failey, 46 Vt. 448; Langdon v. Bowen, Id. 512. And where one is secured and the other not, to the one not secured. Briggs v. Williams, 2 Vt. 283. He received the avails of the coupons on the five hundred dollars of the bonds pledged, or the benefit of them on his debts. The oldest debt due her for interest was the balance of one hundred and two dollars and seventy cents. This was all the interest he owed her besides the three hundred and one dollars and eight cents accrued interest on the notes. He paid her during the first year after, applicable, according to their expectations, to what was due then, one hundred and seventy dollars; during the second year, one hundred and seventy-six dollars and sixty-five cents; during the third, one hundred and twenty-five dollars; during the fourth, one hundred and thirty dollars; during the fifth, one hundred and forty-five dollars and twenty cents; and during the sixth, before the proceedings in bankruptcy, fifty-one dollars.

Applying the first payment first to the balance of interest due, then to the interest on

interest due on the mortgage, and subsequent payments to, first, the gold interest on the five hundred dollars of bonds pledged, then to the interest on the six hundred and sixty-three dollars and forty-one cents, the balance of the avails of the sale, then to interest on interest due on the mortgage, then to interest on the mortgage, and there remains due at the commencement of the bankruptcy proceedings three thousand three hundred and ninety-one dollars and eight cents, and which leaves paid all sums due from the bankrupt to the oratrix, including sales of coupons to April 26, 1878. She is entitled to a lien equivalent to a mortgage lien for the payment of that sum. And as the mortgage was given for the purchase-money, and would have been valid against the homestead right of the bankrupt, so is her lien valid against it. As the whole matter is before the court, she is entitled to a decree as of a foreclosure with the usual time of redemption. Let a decree be entered for the oratrix that she is entitled to a lien equivalent to a mortgage lien upon said premises against the assignee and the bankrupt for the said sum of three thousand three hundred and ninety-one dollars and eight cents, which with interest to the present time amounts to the sum of three thousand four hundred and seventy-five dollars and ninety-five cents, and for a foreclosure, with one year from this sixth day of August, 1878, within which to redeem said premises by payment of the last-mentioned sum with interest to the time of payment and costs.